All right, the next case we're going to hear is Martineau v. Wier. Mr. Wier. Thank you, Judge Niemeyer. May it please the Court. The district court's judgment in this case, permanently barring Paige Martineau from pursuing claims against the man who stabbed her, and the people who deceived her into entering a settlement agreement, rested on two legal errors. First, the district court erred by treating the question of who, as a legal matter, was the right party to litigate these claims as a question of Article 3 constitutional standing. Second, the district court erred by adopting a special rule for the application of judicial estoppel that has been rejected by four of the six courts of appeals to consider it. Under that rule, any time that a Chapter 7 debtor initially failed to disclose even potential unfiled legal claims as assets in bankruptcy, judicial estoppel is virtually mandatory. The district court's judgment should be vacated on both standing and judicial estoppel grounds. I have a question. If you prevail, is this a pure victory? How are the claims not barred by limitations? So, wouldn't, in the light most favorable to your client, didn't limitations on the fraud claim run before the suit was filed? No, Your Honor. So, assuming that Ms. Martineau discovered the facts underlying the fraud on December 30th, 2013, she had three years from that date to file the fraud in the inducement claim. And she filed this case in June or July, excuse me, of 2016. So, that claim is timely. And she also has arguments that that fraud tools the remaining statutes of limitations as to the underlying substantive claims. So, it would not be a pure victory at all, Your Honor. She could proceed to the merits on her claims and sort out those issues in the district court. And I'd like to turn to the standing issue first. Ms. Martineau is the proper party to litigate these claims. There's little question that she satisfies the irreducible constitutional minimum of Article III standing with respect to claims against her attacker and her contractual counterparty. She's a stabbing victim in the party to the settlement agreement. So, she has suffered injuries, in fact, caused by the defendant's conduct that are redressable by a judicial decision. That's all it needs to show for Article III standing. The only question, then, is who is the proper party as a legal matter to litigate these claims? And we can see that on the day that this complaint was filed, that the proper party... That's why I was asking the limitations question, because when she filed the suit, does the time run from then or does it run from when the trustee abandoned the claim? So, this suit was timely filed when she filed it. And even though the trustee was the proper party on that day, because Ms. Martineau went back to the bankruptcy court and disclosed the claims, and the trustee then abandoned those claims, they reverted back to Ms. Martineau as if no bankruptcy had been filed. That's what this court held in its unpublished, in-write detergent decision. That's what the D.C. Circuit held in Moses. And that's what the Supreme Court said in the 1937 case, Brown v. O'Keefe, where it described the effect of a trustee's abandonment as being, quote, the same whether title is conceived of as remaining in the bankrupt or as afterwards reverting. So, even though it is something of a legal fiction, the trustee's abandonment restored Ms. Martineau's interest fully as if... As if she filed the suit? Exactly. As if she had never filed for bankruptcy in the first place. And it is as if she was the proper party on the day the suit was filed. And we submit that this question is best analyzed under Federal Rule of Civil Procedure 17. That's what this court suggested in Wilson. Was that raised by her at the time? Yes. So, Ms. Martineau has made a consistent argument all along, that when she disclosed the claims to the Bankruptcy Court and the trustee abandoned them, she was free to pursue the claims. And in her initial opposition to the motion to dismiss at JA 140-141, she even used the words party and interest. Now, that brief was filed after she had disclosed these claims to the Bankruptcy Court, but before the trustee had taken any action. But she assured the District Court that no matter what the trustee decided to do, there would be a party and interest litigating these claims. And as the Seventh Circuit recognized in Spain, courts are not always consistent with how they refer to this question. They analyze it sometimes in terms of standing, sometimes in terms of the real party interest, and sometimes in terms of both. So, we submit that it would be unrealistic and unfair to Ms. Martineau to hold her to some sort of waiver standard when she clearly identified the concept and courts are not consistent as the terminology that they use. But under Rule 17, as this court suggested in Wilson, a District Court is free to consider whether the trustee or the debtor is the proper party. And under Rule 17, a District Court may not dismiss a case for failure to prosecute in the name of the real party interest until that the case. And we submit that's exactly what happened here. The trustee had a full and fair opportunity to join this case, to take it over, and it chose not to. And that abandonment by the trustee is, in effect, ratification of Ms. Martineau pursuing the claims. And just like with, Judge Hollander, your question before, under Rule 17.8.3, once the real party and interest to a case makes its decision, the case proceeds as if it were, had been commenced in the name of the real party and interest. So, it is as if Ms. Martineau was the proper party all along here. And turning next to the judicial estoppel issue, we submit that this court should join the 6th, 7th, 9th, and unanimous en banc 11th circuits in rejecting the District Court's minority rule. And there are a few reasons for that. Now, first, the minority rule makes judicial estoppel virtually mandatory. And it conflicts with this court's requirement that District Courts apply judicial estoppel based on the specific facts and circumstances of each individual case. So, this is the rule that presumes that if the debtor had knowledge of a legal claim that wasn't disclosed, you presume bad faith? That's right, Judge Harris. So, the District Court applied a rule that holds the only way that a debtor can show that she acted inadvertently or made a mistake was to show either that she didn't know the facts underlying legal claims, not even necessarily whether she knew she had legal claims, but just the facts underlying the claims, and or the debtor could show that she had no motive to conceal those claims. But then at two of the District Court's rule, a court will infer that a Chapter 7 debtor has a motive to conceal the claims just based on the fact of nondisclosure and the nature of Chapter 7 bankruptcy. In every single Chapter 7 bankruptcy, a debtor will have a motive to conceal the claims because if a judgment is collected, that money will go to the debtor as opposed to the creditor. And so, we submit that that mechanical rule is inconsistent with what this court has required District Courts to do for decades. I just don't understand. I just... The rule sort of presumes from knowledge of a claim that it wasn't inadvertent. I understand how it works. It means it wasn't, if you had knowledge of the claim, we assume the motive, and so we can presume from knowledge of the claim that the nondisclosure was in bad faith. But then you're right. The courts below also said, and we get to the knowledge if you knew about the facts. And I'm just having trouble even wrapping my mind around the idea that you know about a claim that you have made no steps to pursue, that you believe is barred by a settlement. But you're going along. You're okay with the premise. She did have knowledge of this claim. The problem is the part where they presume from that knowledge the bad faith. Right. So, we're accepting for the purposes of this appeal that she had knowledge of the claims. What does that mean? What do you mean when you say that, that she had knowledge of the claim? So, she reviewed Guest's criminal file in December 2013, and that file led her to believe that the weirs had lied to her in the settlement agreement. So, she at that point, according to the District Court, knew that a fraud had been committed. Now, she has submitted a couple of claims that reasonably, but mistakenly, were barred by the settlement agreement. Yeah, that's huge. She knew only that. I just literally don't understand what she was supposed to write down on the form. If we credit her account, I don't understand what it means to get a bankruptcy form and write down a bunch of lawsuits you don't believe you have. We absolutely agree with that, Judge Harris. It's an unrealistic standard to hold, especially pro se debtors like Ms. Martin. Well, even like the most sophisticated debtor in the world, if you don't think you have a claim, how can you write it down? But you're conceding. But you are conceding that she had knowledge of her claim for these purposes. Yes, for these purposes, that she had knowledge of her claims. She's- I gather what you're arguing for is some standard where, even with knowledge, there still has to be some element of deliberateness and intent on her part to forego the claim. Yes, that's right, Judge Niemeyer. And that's what this Court has required for decades. This Court has said that the determinative factor in the application of judicial estoppel is whether or not the litigant acted with bad faith intent to manipulate the judicial system. And this Court has also said- Does it have to be bad faith? How about some deliberateness and basically with full knowledge intending to give it up? No, it's- Manifesting, I'm giving it up. The standard, as this Court has articulated for decades, is bad faith. Bad faith. Just knowingly omitting something from the forms of the bankruptcy- Not enough. So we submit that a holistic inquiry, like this Court has required for decades, is the more appropriate way to evaluate this. A court can certainly consider, Judge Harris, that it is unrealistic for a debtor to dream up all of the potential causes of action that they may have when they're in bankruptcy based on all of the times that they've been injured, regardless of whether or not they have a legal theory. And this wouldn't even be on that list because the settlement precluded bringing a lawsuit. So even if you were imagining your hypothetical lawsuits based on facts that happened to you in the past, this still wouldn't be on the list. That's exactly right. And she reasonably and mistakenly thought that the settlement barred it. But a holistic inquiry does a couple of things that the district court's rule doesn't do. First, a holistic inquiry ensures that a debtor acted with a sufficiently culpable mental state. Judge Niemeyer, you're asking about bad faith. A holistic inquiry is what a district court can use to assure itself that the debtor, in fact, acted in bad faith. Under the district court's rule, where the only facts that matter is whether or not a debtor knew of facts underlying their legal claims, there will inevitably be claims that are barred when a debtor just made a good faith mistake. And we submit that that's what happened here. I sort of viewed this case as two different lawsuits that she had. The first was for the tort that she suffered. And the second is her effort to set aside a settlement agreement based on inducement, fraudulent inducement. And it seems to me that maybe Judge Hollander's question is more critical in the sense that the tort case may be gone in terms of statute of limitations. I'm not sure that anything told it, but that tort wasn't concealed. What was concealed was a settlement agreement. And so the damages in the settlement agreement case, set it aside, would be what settlement would I have been able to obtain had I known that of the facts that I claim was held back from me. And so she obtained $20,000 in this settlement, and she would then have to argue I would have gotten X in that if the settlement was fraudulently obtained. And I don't know if that changes the dynamics of this judicial estoppel or the statute of limitations or what, but it's going to be no matter whether you win or lose, it's a little messy. It sure is, Judge Niemeyer, but we don't think it changes the calculus at all. She certainly has arguments that the fraud as it relates to the settlement agreement would toll the underlying substantive causes of action. Why is that? Basically, it would be the fraud. She wouldn't have entered into settlement, so her damage is what would she have obtained had she entered into settlement. Now, you may end up then viewing the initial case in that context, but she was not precluded or... It sounds to me like it might be a pretty dicey position to say a settlement agreement tolls the statute of limitations. Well, the settlement agreement contained a release barring her from pursuing the underlying causes of action. So to the extent that she was defrauded into agreeing to that. The issue then is the fraud claim. Your issue now is the fraud claim, not the tort claim, because you gave away the tort claim, but you gave it away fraudulently. I mean, you were induced to give it away for a low price when you should have gotten a high price, which is a different cause of action than the underlying action. I'm not sure I understand how the settlement tolls the statute of limitations. Obviously, you're not going to file suit if you believe you've settled. But if you were induced by fraud, then you have a fraud case. Well, she's pursuing both. Well, I know she is, but... Can I ask you a question? You're focused on your brief and your argument. It's focused mostly on the bad faith prong of judicial estoppel. But there are other requirements, too, right? And one of them is that the prior inconsistent statement, which here, I guess, would be the implied statement that she had no legal claims against the defendant, has had been accepted in the prior proceeding. And how did that happen here, given that the bankruptcy court reopened the case to consider those legal claims? It seems like it wasn't accepted. We submit that it was not accepted, and nor is Ms. Marnot taking inconsistent positions any longer. She's telling both the bankruptcy court and the district court that she has valid claims here. And so the essential justification for applying judicial estoppel has sort of fallen away as well. And is that something that you preserved in that argument in the district court? Ms. Marnot argued that the district court applied the wrong test for judicial estoppel by focusing only on her knowledge of the facts. She didn't specifically argue whether or not the first and second New Hampshire factors apply. But that's certainly something that we think that the district court should have considered at a holistic inquiry. If we send this back, I'm sorry. You're asking us to remand this, right, to the district court to do a totality of the circumstances analysis rather than relying on the presumption? Yes, we're asking this court to clarify the legal rule and reject the presumption. And we think that based on the undisputed facts in the record, this court can and should hold that the defendants have not met their burden at this preliminary stage of proving that judicial estoppel applies. Okay. You want us to do that or the district court? I think this court can do it based on the undisputed facts in the record. This case is here on a review of summary judgment. All right. That would not normally be our role, would it? We'd be happy with a remand as well. Thank you. Thank you. All right, Ms. Durant. Good morning. May it please the court, your honors. My name is Beth Durant, and I'm your formal Beth Salvin, my law partner from Salvin Durant. We're happy to be here today to represent Richard Guest along with Joel and Diane Ware. Excuse me. I'm fighting a little bit of a cold, but if you'll bear with me. This is a case about the consequences of a debtor's failure to disclose a lawsuit to a bankruptcy and then trying to proceed. But she filed for the bankruptcy so far in advance of the lawsuit. How can the district judge have determined that she deliberately omitted the claim? Your honor, the judge, the district judge, looked at the totality of the evidence. She looked at the fact that she was a licensed lawyer in South Carolina. She looked at the fact that she graduated from Vanderbilt Law School. She looked at the fact that Ms. Martin had disclosed another claim. But that was an actual pending lawsuit. It was a pending lawsuit. Not one that did not yet exist. The actual claim did not exist. In other words, the one she did disclose was pending. Yes, your honor. But there's case law out there that says you don't need a case actually pending. So to disclose that in your schedule. Yeah, but those are not cases. I could not find cases. I understand that there's a line of cases about how the lawsuit doesn't have to be filed yet to still belong to the trustee.  That had not been filed. That the debtor was saying it never occurred to me I could file. There were no preparatory steps like a filing with the EEOC or something like that. It just makes no sense to me that you would presume bad faith from a failure to disclose a lawsuit that has not been filed. There are no steps being taken to explore it. No filing at the EEOC. And why would you assume it's in bad faith as opposed to either telling the truth she didn't think she was going to bring a lawsuit or this person, lawyer or not, looked at the forms and didn't see anything that said specifically you need to list even cases that haven't been filed. The only thing I could find on the form actually asked for a case number where you have to list your legal claims. So it clearly doesn't contemplate, at least expressly, that you would list cases that haven't been filed yet. It just seems like such a stretch to put aside the presumption as applied to an existing legal claim. But I'm just not getting kind of the common sense reason to presume bad faith from a failure to disclose a lawsuit that has not been filed. I hear what you're saying. I hear what you're saying. But I think the record reflects otherwise. Regrettably, Ms. Martineau was stabbed by Mr. Guest. Throughout her filings, she suggested that she had done exhaustive research through Westlaw. But the district court clearly and the magistrate did apply this presumption. I don't think so, Your Honor. Well, they cited it. They cited the cases applying it. They said it. I mean, I don't know how we get around that. No, I understand what you're saying. They did cite the cases that refer to the inferences. I hear you and I agree with you on that. However, I do think both the magistrate and the district court looked at the record as a whole. So just to be clear about your position, assuming hypothetically I think they relied on this presumption, do you agree that they should not have done that? No, no, I agree. I agree that relying on the presumption was fair for the district court to do it. Okay. I do agree. So you're defending the presumption. I am. I am defending the presumption. And I do want to take issue with... Let me ask you, I'm sure it's a little bit unusual. If you rely simply on the fact that she had knowledge and didn't file it and no other fact, I mean, for instance, what if she said, I just forgot? Which is a perfectly possible fact. The court didn't rely on that. The court relied on two facts. One is that she knew of her claim. And two, she had a motive because she would have benefited by not disclosing the claim. And concluded that based on those two aspects, the court, it was fair to conclude she was manipulating the system. Yes, Your Honor. And if I understand you correctly, your question is what if she just made a mistake? I'm saying that standard would include the possibility that she made a mistake or she had a misunderstanding about her claim. But one common thing, it hadn't been filed. Nothing was pending. Sure, it was still hanging around in her mind. But she could have just said, well, I don't have a lawsuit right now. Or she could have said, I settled the lawsuit. Or I didn't think of it. But the question is, you would need something to get to the notion that there is bad faith, there's a manipulation of the system. It seems to me you need something more, some factual aspect more than that standard would allow. Well, I think the facts and the record bear out that she did. Well, no, I'm talking about the standard. Just the standard. Just the standard. Because you were, in your last answer to Judge Harris, you said you were defending the standard that the court applied. I am, Your Honor. Although I do not think that's what the district court applied, I do think the judge did exactly what Ms. Martineau is now asking for this court to do, to look at a holistic approach and to look at facts and circumstances. I do think that's what the district court did. However, as a fallback, I do recognize that the district court cited cases from the Fifth and Tenth Circuit that apply that presumption. However, I don't think that's what the district court did. But to answer your question, what happens if a debtor makes a mistake, that very well may happen. But if you look at the case law, the Fifth and the Tenth Circuit say, this is a bankruptcy, it's a very serious process. But that's why the bankruptcy court has available all kinds of sanctions that can apply if people try to manipulate the bankruptcy court. Why does judicial estoppel have to step in here? Absolutely, Your Honor. The bankruptcy court does have those ways to protect against fraud. But this case was pending before a federal district judge. And she also has the duty to protect the entire federal judiciary, which includes Article I bankruptcy courts. So the fact that it happened to be before Judge Seymour does not preclude her, or does not cause her from stepping back to allow a district court, I mean, I'm sorry, a bankruptcy court to handle it. And, you know, the other salient fact here that hasn't been discussed is the fact that in her bankruptcy schedules, when she went to amend this claim, she listed the claim as a $50,000 claim. In her complaint, she listed it as a half a million dollar claim. In her pleading, she says that cases of this size settle for $6 million to $12 million. So the fact that she was some innocent, you know, babe in the woods, I just, I don't think the record bears out that story. And we are stuck with the facts before us. I hear your concerns about what happens if there's a mistake, but the bankruptcy court, I mean, filing bankruptcy is a serious process. And it's not something that you can simply- I'm not a bankruptcy person, but I did look at the forms and I couldn't find the thing that would sort of alert even a lawyer to the fact that, where are you supposed to write down your non-existent legal claims? In your Schedule B, I think it's listed as contingent and un-contingent claims. Yeah, but I would have thought a contingent claim is, I've got a suit pending. I don't, you know, it's still contingent. I haven't won yet. Yes, you are. Is there anything that says sort of clearly, like even if you have not brought a legal claim, you need to list any claim you are thinking of bringing or might be able to bring based on facts of which you have knowledge? I don't think it has that extensive language. Yeah, what do you, what is it that you think it says that would put someone unnoticed? But I do think it says, and I can find it for you in the record rather quickly, if you would like me to. You can just, if you know what it says, that'd be great. I mean, I do remember looking at it, but now I can't remember where it is. It's in Schedule B and it's also in the Statement of Financial Affairs. I mean, I remember the language about contingent claims. Is there anything more specific than that? Let's see. On page 169 of the record, it lists, or it asks the putative debtor to list other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and rights to set off claims. Yeah, yeah, yeah, I got that. But I just think it would be reasonable for someone to read that as referring to contingent existing legal claims, not hypothetical. I mean, is a debtor really supposed to go through and think, let me think about everything that's happened to me in my life. Are there any facts on which I might someday sue? I guess you'd only have to go back a certain number of years because of the statute of limitations. The short answer is yes to that, Your Honor. And there's something on the form that tells the debtor you should do that. That's why you should go to a lawyer. And this is my concern. I'm not suggesting that you don't have to do it. I'm suggesting that in this particular context, when we're talking about unfiled legal claims, the hypothetical facts that Judge Niemeyer was talking about seem especially likely to occur. That a debtor might inadvertently not understand from this form, I'm supposed to write down legal claims that don't exist. That's an odd exercise. It's not intuitive that you would think, I better start writing down lawsuits I have not filed. And I don't see anything on the form that would tell you, clearly, you should do that. So I'm not suggesting you don't have to do it. I'm suggesting there may be a lot of mistakes in this context and that we should not be quick to adopt a rule in this context that turns those mistakes into a judicial estoppel problem that lets potentially wrongdoing third parties off the hook. Just because someone didn't understand in looking at this form, I need to write down things that don't yet exist. I hear your concern. I do not think the record reflects that's what happened in this case. But I hear your concern. And Your Honor, briefly, I do want to raise the issue that I think Judge Hollander raised about waiver of Rule 17 and prudential standing. I think absolutely those claims have been waived. Prudential standing was not brought up until after, or until the Rule 59e motion. And Rule 17 was not addressed until the initial brief in this case. Both of those can be waived under U.S. v. Migrant. I'm sure I'm mispronouncing that name. It's strange to believe that when they bring a claim and they don't particularly use the word prudential standing as opposed to constitutional standing, that therefore they have waived. It seems to me the whole fact that they are bringing the case indicates an intent not to waive such a claim, which would throw them out of court. So it seems to me you'd have to have a pretty clear understanding of what you're doing before we'd impose a waiver. I think we would be imposing a pretty tough rule, especially when it was argued to the level that they could bring their claims. Sure. Well, I thought the issue was between whether a sort of an argument as to whether this was Article III standing or the other standing, which some people call prudential or everybody sort of attacks it. But we know what it is. It's a person who's been injured is the person that should be suing. Yes, Your Honor. And that leads me beautifully to my next point is that at the time Ms. Martineau filed this complaint, I think even Ms. Martineau would agree that she did not have standing. Therefore, she had no, the lower court had no subject matter. She had standing, but that the issue is she, he concedes that she didn't have standing at that point. Yes, Your Honor. But the question then is when she did get standing, the bankruptcy trustee bowed out and said, I'm no longer interested. It is her claim. And the question is now, why doesn't she have standing? And the only argument you can have is the doctrine that Article III is tested at the time the suit is filed, whereas other standing is not. And that's what I thought the issue was here. I think you're close and you've actually said it more eloquently than I am. I should say actually, of course, you said it more eloquently than I would have. Um, but when Ms. Martineau filed this lawsuit, now that we all agree she did not have Article III standing. No, no, no, we don't agree that. I don't agree that. That's the opposite. You think that she had Article III standing? She was injured and she, she satisfies Article III standing. The question is whether she's the right sewer. That issue was not raised, Your Honor, until the Rule 59, you mentioned. You raised the Article III standing. Yeah, I did by virtue of saying she has not. And the fact is that it would end the case, basically, if we said she does have Article III standing. In other words, she was injured and her suit would redress those injuries. She was, but Your Honor, after the... Your argument is the wrong person was bringing the suit. You got it. Yes, Your Honor. I understand that. But you raised it as an Article III standing, which is determined at the commencement of the action. And if we reject that, that ends it. We don't have to go into whether there was prudential standing because that, as you argue, wasn't debated. You're basically asserting Article III, didn't you? I am asserting Article III, yes, Your Honor. And you only get the benefit of that standing defense if it is Article III standing. And if we reject that, we don't have to go into the rest of the stuff, I would think. I think you're probably right, Your Honor. I do, I do. Um, but the one point I wanted to make, if I'm correct, that she did not have Article III standing when she made this punitive motion to amend, she had no standing to make that motion to amend in her response to the motion to dismiss. And she... Well, if there's no jurisdiction, there's no jurisdiction. You got it. Let me ask you this. What do you understand to be the criteria for Article III standing? That she owns the claim. That's your understanding? That's not my understanding. But that's my argument is that she did not. I'm asking you, what is your understanding of the criteria for Article III standing? That there's an injury in fact, and that it can be rejected by the courts. Yes, Your Honor. Yes, Your Honor. But I do stand by the position that because the trustee owned the claim, she did not have subject matter jurisdiction. She was the, as you said, the wrong party. Although I do not instill a contention that was not argued until the time passed for it to be preserved. Why couldn't that be cured when the claim reverts to her? Even if you were right. If we were right, our position is that her case, when she initially filed for complaint, was null and void because she had no subject matter jurisdiction. And that she needed to refile a complaint when she regained standing. Then she would have been the proper party to bring the case. I cover it? No, I just see some confusion. I thought there was another question. Yeah, I'm pondering that. Okay, okay. Let's see. In the real world, when these things happen, and it's happened in cases I've had, essentially while the litigant goes about the business of securing the trustee's abandonment of the claim, the case is sort of on hold. Then the claim gets abandoned and the case proceeds. I think you're absolutely right, but that's not what happened in our case. It's that she never asked, or the court never granted her a stay to work out her issues with the bankruptcy court. Well, it doesn't necessarily need to be formalized. Nothing's happening while the person goes about getting the abandonment of the claim, and that is indeed what she did. She did, but there was a lot going on in the district court while she was getting beat, while she was dealing with amending the bankruptcy schedules in Pennsylvania. There was a lot going on in the district court, we contend, but she never officially moved to stay the case while she worked out the issue with the bankruptcy court. And she was the wrong party to bring the case, and that's what we're going to stand by. But at the end of the day, Your Honors, we believe this is not a case where there was a mistake made, where there was things overlooked. She knew about the claim, and we... I'm sorry, so your position is she was planning to file? I mean, that is your position. She was planning to file this claim when she filed for bankruptcy, and she deliberately didn't list it. Yes, Your Honor, that is our position. Okay. She knew all about it. When she saw the criminal files, she knew all the facts to support it. No, no, no, but you also think not only did she know the facts, she decided, I'm bringing this claim, but on purpose, I'm not going to disclose it because I want to keep the money. I don't want it to go to my creditors. That is my position, Your Honor. And is your position that that's what the district court thought as well? That's how we interpret the district court's opinion. When the district court stated the evidence shows that she withheld the claim and that she acted... She did not act inadvertently and that she did... Well, the district court didn't say that, that she didn't act inadvertently. Well, they said the evidence shows that she had... Knowledge of the facts. Yes, yes, yes, yes. Right, and we're going to assume the motive. Yes, yes, yes, Your Honor. Well, that's a little bit different than... It is, and thank you for correcting me. I know that this isn't really addressed very much, but at the end of the day, the magistrate judge was the one who decided to treat it as a summary judgment motion. She didn't respond and she had the chance to present evidence, but this issue never was fleshed out in terms of discovery. No, Your Honor. When she had the chance to respond, she tried to disqualify Mr. Sowell as counsel for the wares and Mr. Guest and then did not submit any additional evidence or to defend against our measure for summary judgment. An affidavit, right? There was an unsworn affidavit, yes, Your Honor. All right, and at the end of the day, we asked that the support confirm or affirm the district court's position and standing and find that the district court did not abuse its discretion in the bed judicial estoppel. All right, thank you, Mr. Durant. Mr. Greer. Thank you, Your Honor. Just a couple of quick points. Judge Hollander, to your point about the magistrate judge converting this motion to one for summary judgment, that is true. Ms. Martineau only had 12 days to supplement the record upon notice that the magistrate judge intended to convert the summary judgment and she did file an affidavit under penalty of perjury in response to that motion. Quickly on the waiver issue, as I mentioned, Ms. Martineau did use the term party of interest at JA141, her very first opportunity to do so in her initial opposition to the motion to dismiss. And then finally, on the judicial estoppel point, Judge Harris, you mentioned the timeline here and we think it's critical and should have factored into the district court's analysis. The defendant's theory of Ms. Martineau's bad faith depends on her knowing the facts underlying these claims on December 30th, 2013. She then supposedly sat on these claims for 18 months as her debts continued to pile up and then she filed for bankruptcy. And when she filed for bankruptcy, she sat on the claims for another year, supposedly. What do you ascribe when she amended her bankruptcy? Yes. Add the claim. What do you take from the fact that she attributed $50,000 to the value of the claim? Your Honor, there's no indication in the record or any explanation for why there's some sort of discrepancy, but the record is clear at JA232 that when the bankruptcy trustee in the reopened case held a meeting of creditors, the bankruptcy trustee examined the case record in this case. And it's clear that on the first page of her complaint at JA7, Ms. Martineau pleads that the amount of controversy here is $500,000. So even with that information, the trustee still decided that it was not in the interest of the bankruptcy estate to litigate these claims. And just returning very briefly to the timeline. That doesn't quite answer. I'm suggesting that I don't think the district court relied on the fact, but if she believed she had a $500,000 claim and now she's under notice and amends her schedule, bankruptcy schedule, to identify the asset as a $50,000 asset, the motive there clearly is not to give her creditors value, but to preserve them for herself, maybe to encourage the bankruptcy court to abandon. In other words, there's such a discrepancy between what she said she believed the claim was worth and what she listed it as. That's not a total bureaucracy. So setting aside the fact, Josephine Meyer, that the bankruptcy trustee presumably knew the amount of controversy in this case because it was pled in Ms. Martineau's complaint, this case is here on summary judgment. To the extent that there's any inference to be drawn from the discrepancy, it would be improper to draw that inference against Ms. Martineau. And so we would submit that on the facts and the undisputed facts in this case, that there's no way to find that summary judgment and judicial estoppel is appropriate without drawing inferences against Ms. Martineau, and that's improper at this preliminary stage of proceedings. This case has been tied up in procedural litigation for three years, and so we would ask this court to vacate the district court's judgment and remand to allow Ms. Martineau to pursue her claims. Thank you. Thank you. We'll adjourn court for the day and then come down and greet counsel. This honorable court stands adjourned until tomorrow morning at 8 30. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Pamela A. Harris, Ellen L. Hollander